

**SO ORDERED.**

**SIGNED this 09 day of February, 2011.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **CASTLE HORIZON REAL ESTATE, LLC** | **10-08485-8-SWH** |
| **DEBTOR** | **CHAPTER 11** |

### ORDER DENYING MOTION TO DISMISS AND RELIEF FROM THE AUTOMATIC STAY

The matter before the court is the motion to dismiss or for *in rem* relief from the automatic stay filed by First Citizens Bank & Trust Company, Inc. ("First Citizens") and the debtor's objection thereto. A two-day hearing was held in Raleigh, North Carolina, beginning on January 7, 2011, and concluding on January 14, 2011. For the reasons that follow, the court will deny the motion.

### STATEMENT OF CASE

Castle Horizon Real Estate, LLC ("Castle Horizon") filed a voluntary petition under chapter 11 on October 15, 2010. The debtor filed a previous chapter 11 case on July 20, 2009, which was dismissed by Judge J. Rich Leonard on September 10, 2010. Judge Leonard's dismissal

was based on the debtor's failure to file a disclosure statement and plan within the 300-day window imposed on "small business debtors" pursuant to §1121(e) of the Bankruptcy Code (the "Code").

In the current case, which was filed on October 15, 2010, First Citizens filed a motion to dismiss pursuant to §1112(b) of the Code on November 8, 2010, contending that the case was filed in bad faith. Alternatively, First Citizens seeks *in rem* relief from the automatic stay. The Bankruptcy Administrator supports First Citizens' motion. First Citizens also filed a motion to designate Castle Horizon as a "small business debtor" and that matter was continued to a date to be later set by the court, pending entry of this order.

## BACKGROUND

Debtor Castle Horizon is a North Carolina limited liability company which owns a 133.8 acre tract located at 171 Country Lane, Magnolia, Duplin County, North Carolina (the "Property"). This tract, Castle Horizon's only asset, was formerly operated as a golf course. The debtor has designated this case as a single asset real estate case as defined in 11 U.S.C. § 101 (51B).

Mr. Giles Tomkin and Ms. Kip Tomkin (the "Tomkins") are the only members of the debtor. The Tomkins reside in a single family residential home located on the Property. The Tomkins also are the principals in the Sanctuary Project, an entity recently designated as tax-exempt pursuant to § 501(c)(3) of the Internal Revenue Code, and successor-in-interest to Castle Horizon Management, LLC, the former operator of the golf course previously located on the Property. The Sanctuary Project currently uses the Property to conduct its charitable operations pursuant to a pre-existing lease agreement between Castle Horizon and Castle Horizon Management, LLC, its predecessor-in-interest.

First Citizens, as successor-in-interest to Temecula Valley Bank, is the holder of a promissory note executed by the debtor in the original principal amount of $900,000, secured by a first-priority lien on the Property. Upon the debtor's default under the note, a foreclosure sale of the Property was held at which First Citizens was the high bidder at $514,229. During the statutory upset bid period following the foreclosure sale, debtor filed its first chapter 11 petition on July 20, 2009. In that case, at a hearing on First Citizens' motion for relief from stay, Judge Leonard determined that the value of the Property, including all improvements thereon, was $891,000. Upon dismissal of the first case, the foreclosure sale of the Property was re-noticed for and held on October 8, 2010. First Citizens was again the high bidder with a winning bid of $702,511. Again, the debtor filed a case under chapter 11 during the statutory upset bid period on October 15, 2010. The most recent proof of claim in this case filed by First Citizens is in the amount of $1,243,871.74. The proof of claim designates that First Citizens holds a secured claim in the amount of $891,000 and an unsecured claim in the amount of $352,871.74.

The debtor's statement of financial affairs indicates that the debtor did not generate any income from 2008 until the petition date. The Tomkins as individuals have made several payments on behalf of the debtor for expenses associated with the Property, including insurance, taxes, and other expenses. Ms. Tomkin and Mr. Brian Torrans, Director of Business Operations for the Sanctuary Project, testified that the Sanctuary Project operates a food bank on the Property that is currently generating income. The food bank generates income by charging needy families a fee of $20 per month per family for approximately 80 pounds of food, which is donated by area supermarkets. In addition to the fees charged families and the food donations, operations are further enhanced by volunteers and a grant from the National Caucus and Center on Black Aged that

3

permits the Sanctuary Project to pay staff. The debtor grossed $1,500 in December as a result of serving approximately 75 families.[1] There are efforts to expand operations through food donations from additional supermarkets, as well as other grant applications, which are pending. Debtor's ultimate goal is to supply 500 households, in which event the debtor would gross $10,000 monthly if the current $20 rate is maintained. Mr. Torrans testified that demand for the food bank's services at the current rate would support such expansion.

The Sanctuary Project has not previously paid the debtor for the use of the land. However, testimony was received regarding its intent to commence rental payments. Additionally, funds in the amount of $6,000 were tendered to First Citizens at the hearing. Ms. Tomkin also testified that the Sanctuary Project and the debtor will reach a new lease agreement for rent in an amount that will enable the debtor to make sufficient monthly payments to First Citizens in accordance with a plan of reorganization. Both Ms. Tomkin and Mr. Torrans testified that the Property was critical to the Sanctuary Project's work and mission.

## DISCUSSION

Whether a Chapter 11 case may be dismissed for lack of good faith is determined by application of a two-part test derived from the Fourth Circuit's decision in Carolin Corp. v. Miller, 886 F.2d 693, 700-01 (4th Cir. 1989). The movant must satisfy a two-pronged inquiry and demonstrate "both objective futility and subjective bad faith." Id. at 700. A showing of either one, but not the other, is insufficient. The Carolin court explained that

---

[1] The Sanctuary Project has been serving, on average, approximately 110 households and has received about $1,300 in gross receipts in prior months, which suggests that some families are unable to pay the $20 fee.

4

> [t]his means that if the only question raised is whether a reorganization is realistically possible, i.e., if there is no question of the petitioner's subjective good faith in filing, threshold dismissal of a petition is not warranted. In those circumstances the question of ultimate futility is better left to post-petition developments. By the same token, even if subjective bad faith in filing could properly be found, dismissal is not warranted if futility cannot also be found.

Id. at 701.

Objective futility may be demonstrated where the court's inquiry reveals that "there is no going concern to preserve . . . and . . . no hope of rehabilitation." Id. at 701 (citation omitted). Subjective bad faith is determined by "whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" Id. at 702 (citation omitted).

First Citizens asserts that the debtor's case is objectively futile based on the fact the debtor has not been operating and lacks funds. Debtor's Schedule B filed in the current case indicates that the DIP account contains only $266.18. Additionally, the Property has not been operated as a golf course for over two years. First Citizens argues that if the debtor *were* operating as a golf course, it would have the benefit of a stream of monthly membership dues that would assist it in meeting its financial obligations. Debtor countered these allegations by pointing out its ability to make payments to First Citizens from non-operating sources, such as the $6,000 payment previously discussed, as well as adequate protection payments made in the first case. The debtor also maintains that it is, in fact, operating. While the present use of the Property may have changed from a golf course to a food bank, the debtor argues these are indeed current operations which generate income.

With those arguments in mind, the court turns first to Carolin's "objective futility" standard. That prong is reviewed in light of that court's admonition that while evaluating either prong of the

Carolin test, it is "better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." Carolin, 886 F.2d at 701.

Mr. Torrans testified that the food bank run by the Sanctuary Project has the ability to generate income sufficient to pay First Citizens without even taking into account other potential ventures designed to generate funds.[2] Facts supporting the plausibility of that conclusion include the Sanctuary Project's newly achieved tax-exempt status, evidence of recurring substantial donations of food by Food Lion, and the grant that provides a means to maintain a staff. While the court recognizes that the Sanctuary Project is not the debtor in this case, the two entities are so intertwined that the failure of debtor would have a serious adverse impact on the Sanctuary Project entity. To the extent the Sanctuary Project is generating income, there is no reason to suspect that those funds would not be available to meet the financial obligations of the debtor. A plan of reorganization could easily provide for the commitment of lease payments from the Sanctuary Project to First Citizens. Certainly, First Citizens has not established that "there is no reasonable probability" that the debtor will, eventually, successfully emerge from bankruptcy proceedings. See, e.g., In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2nd Cir. 1991) (construing Carolin, 886 F.2d at 698-702). At this stage, the debtor only needs to show that it is possible to reorganize.

---

[2] Counsel also presented evidence of other possible business ventures to be undertaken by the Sanctuary Project and/or the debtor. Those ventures included the rental of market stalls for a flea market, lot rentals for both prefabricated and transitional homes, leasing space for billboards, recycling of waste vegetative material, sale of residential lots, a tree nursery, and selling both timber and water collected from the premises. For the reasons explained in the discussion section, the court need not evaluate these ventures at this time because there is sufficient evidence that the food bank could serve as an independent foundation to a successful reorganization.

In an attempt to establish subjective bad faith under the second prong of Carolin, First Citizens argues that all factors of bad faith articulated in In re Little Creek Development, 779 F.2d 1068 (5th Cir. 1986), are present in the current case. The factors to be reviewed in that assessment require the court to determine (1) whether there is a single asset, (2) if assets are totally encumbered, (3) if there are few employees, (4) if cash flow is inadequate, (5) if there are only a few unsecured claims of relatively small amounts, (6) if the property is in foreclosure, and (7) when bankruptcy is the only way of forestalling loss on the property. Id. at 1072-1073. Even if all factors were established, the court would consider them as relevant in determining bad faith but not determinative. After addressing Little Creek Development several times in its opinion, the Carolin court made clear that

> [t]he dangers of overemphasis on particular indicia or patterns, of engaging in mere indicia-counting, and of forcing particular facts into previously identified patterns is obvious, and must be guarded against. We simply note, as have other courts, that a totality of circumstances inquiry is required; that 'any conceivable list of factors is not exhaustive'; and that there is no 'single factor that will necessarily lead to a finding of bad faith.'

Carolin, 886 F.2d at 701 (citations omitted). The court is therefore compelled to consider the totality of the circumstances as to whether there is subjective bad faith.

The debtor contends that the plan was filed in good faith, notwithstanding the bank's allegations that the case was filed during the statutory upset bid period in order to frustrate the bank's efforts to complete the foreclosure. While the fact that a case is filed during the upset bid period is relevant to the inquiry, a determination of bad faith does not necessarily follow. See In re Center 130, LLC, 10-00198-8-JRL (Bankr. E.D.N.C. March 11, 2010) (denying a motion for relief from the automatic stay based on bad faith grounds when debtor filed during upset bid period); In

7

re Lordship Development, LLC, 08-04965-8-JRL (Bankr. E.D.N.C. September 30, 2008) (stating that the Code suspends the upset bid period when the debtor files for bankruptcy within that period). The debtor presented clear evidence of its intent to keep the property to continue the Tomkins' charitable endeavors, and its intent to make payments to the secured creditor. Filing the chapter 11 petition was the method chosen to achieve those ends. This was a presumptively reasonable choice given the fact that the Sanctuary Project now generates revenue from food bank operations which, in turn, constitute a vehicle to generate revenue for the debtor.

At this stage, the court need not determine whether these efforts ultimately will succeed. Therefore, First Citizens has not established an adequate basis on which to conclude that the debtor acted with subjective bad faith in filing the petition. "At this relatively early stage, absent a showing of bad faith and complete futility, there is no reason to dismiss" the case. In re Harmony Holdings, LLC, 393 B.R. 409, 420 (Bankr. D. S.C. 2008).

## CONCLUSION

Taking into account the totality of the circumstances, the court finds that the evidence at this juncture does not support a finding of either objective futility or subjective bad faith. The debtor has a right to proceed to confirmation, where the confirmation standards of § 1129 will be applied. For the reasons above, the motion to dismiss is **DENIED**. Furthermore, the motion for *in rem* relief from the stay will be **DENIED** in light of debtor's showing of a reasonable possibility of reorganization within a reasonable time. However, continuation of the stay shall be conditioned upon the following adequate protection payments to First Citizens:

1. The payment of $6,000 by February 15, 2011; and

2. The payment of $6,000 by March 15, 2011, and every month thereafter on the 15th of the month, until the confirmation hearing;

If any such adequate protection payment is not made by the deadlines set above, and such failure continues for a period of five days or more past the date on which the payment was due, the stay will automatically be lifted without further hearing. The clerk is directed to re-calendar First Citizens' motion to designate the debtor as a small business debtor and will also set the confirmation hearing date.

**SO ORDERED**.

**END OF DOCUMENT**